UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DARYL JOHN CHRISTIAN,<br><br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | CASE NO.   C05-965-JCC-MJB<br>             (CR01-337C)<br><br>REPORT AND RECOMMENDATION |

### INTRODUCTION

Petitioner is a federal prisoner who has finished serving a 46-month sentence for identity fraud and related charges. He is currently under supervised release. Petitioner has filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, to which the government has filed a response. Having considered the briefs and the balance of the record, the court recommends, for the reasons set forth below, that petitioner's § 2255 motion be denied.

### BACKGROUND

The Ninth Circuit Court of Appeals summarized the facts in petitioner's case as follows:

> Responding to a complaint that a man was brandishing a firearm in an apartment building, Seattle police officers met with the complainant, Quillan Small (age 15), and her mother, Karen Kosner. Small was hysterical. Once she calmed down, she told the officers that her mother's boyfriend – a man she called Mr. James – had waved a gun at her during an argument. Kosner was reluctant to corroborate the story and offered very little information. A few minutes later, the officers received word by radio from other responding officers that the suspect (now known to be defendant Daryl John Christian) was in the building.
>
> Upon locating Christian, the officers advised him that they were investigating a complaint involving a gun and asked him for identification. He said

REPORT AND RECOMMENDATION
PAGE 1

that he had no identification on him, but volunteered the name Rick James and the birth date of November 23, 1951. He also said that he lived in the building, a few floors above Kosner and Small. After confirming with Kosner that her boyfriend's name was Rick James, the officers called the Seattle Police Department to confirm the existence of valid identification under that name, and to check for outstanding warrants. The officers also conducted a pat-down for weapons and discovered none.

The records check came up with no one by the name Rick James with that birthday. Christian then told the officers that his identification was from Florida, not Washington. While they ran a Florida check, the officers continued to question Christian about the gun. Christian was evasive and stressed that he did not have a gun "on [his] person." According to the officers, Christian became increasingly nervous and repeatedly put his hands in his pockets, despite at least three admonitions from the officers that he not do so. Worried for their safety, the officers handcuffed Christian. The officers then learned there was no record of a Rick James in Florida. Christian continued to claim that he was Rick James and insisted that he had a Florida driver's license. Their suspicions aroused, the officers informed Christian that he was required to provide a correct name and date of birth, and that if he persisted in lying about his identity, he would face charges of false reporting. Christian responded that his identification was in his car. At the suppression hearing, Christian testified that he told the officers he did not want to go to his car to retrieve his identification, but the officers insisted he do so; the district court, however, found that Christian volunteered to take them to his car.

Christian said that his identification was in the glove box, and acquiesced to the officers' request for permission to open it and look inside. The officers found nothing there. Christian then directed them to a leather bag in the back seat, which contained two wallets. Inside one wallet was a Florida driver's license with Christian's picture and the name Richard Allen James. According to the officers, the license was "a very poor facsimile" and listed James as 6' 4", which did not match Christian's height. The second wallet contained another Florida driver's license with Christian's picture – this time with the name Kent Merlin Younger. The officers also found several credit cards, bearing three different names. Based on this evidence, the officers read Christian his *Miranda* rights and placed him under arrest. The officers again demanded Christian's true name. Christian directed them to yet another wallet in the pocket of the driver's side door, containing a Washington identification for Albert Ernest Hort, which also had Christian's picture on it. It was only after Christian had been taken to the precinct and fingerprinted that he finally offered his real name. He also told the officers that he'd stashed the gun he had allegedly brandished at Small on the twenty-fourth floor of his apartment building, and signed a written consent for a search of his apartment and car.

Christian moved to suppress all the evidence seized at the time of his arrest. After an evidentiary hearing, the district court declined Christian's motion. Christian pleaded guilty to one count of possessing document-making equipment, in violation of 18 U.S.C. § 1028(a)(5); two counts of identification fraud, in violation of 18 U.S.C. § 1028(a)(7); and one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g). Christian reserved the right to appeal the district court's denial of his motion to suppress and now argues that the officers'

REPORT AND RECOMMENDATION
PAGE 2

demand for identification exceeded the proper scope of an investigatory stop. He also claims the consent to search his car was involuntary.

*United States v. Christian*, 356 F.3d 1103, 1104-05 (9th Cir. 2004), *cert. denied*, 125 S. Ct. 317.

On May 31, 2002, petitioner was sentenced to 46 months in prison, followed by three years of supervised release. Petitioner was released from confinement on January 12, 2005.

## PROCEDURAL HISTORY

Petitioner appealed the denial of his motion to suppress to the Ninth Circuit. The Ninth Circuit upheld the district court's ruling in a published opinion. First, the Ninth Circuit held that "requests for identification made during a *Terry* stop are not inherently unreasonable." 356 F.3d at 1107. Second, the Ninth Circuit examined the facts of petitioner's arrest and found that "[u]nder these conditions of heightened suspicion, it was reasonable for the officers to continue pressing Christian for proof of his true identity." *Id.* at 1108. Finally, the court rejected petitioner's claim that the search of his car had been involuntary, finding that the district court was entitled to believe otherwise. *Id.*

Petitioner's request for rehearing *en banc* with the Ninth Circuit and his petition for *certiorari* with the Supreme Court were both denied. He filed the instant motion under 28 U.S.C. § 2255 on May 26, 2005. (Doc. #1). After receiving two extensions of time, the government filed its response on August 16, 2005.[1] (Doc. #15). Petitioner filed a traverse to the response on August 23, 2005 (Doc. #17) and the matter is ready for review.

//
//
//

## GROUNDS FOR RELIEF

---

[1] The government's response was actually due on August 12, 2005. (Doc. #13). In his traverse, petitioner argues that because the government's response was filed four days late, it should be stricken. (Doc. #17 at 1). However, petitioner does not show that he suffered any prejudice as a result of the late filing. Accordingly, his request to strike the response is hereby DENIED.

REPORT AND RECOMMENDATION
PAGE 3

In his § 2255 motion, petitioner lists the following grounds for relief:

1. Illegal search and seizure.

2. Denial of effective assistance of counsel.

3. Intervening change in law.

(Doc. #1 at 4).

The court notes that although petitioner's § 2255 motion lists "illegal search and seizure" as a ground for relief, neither petitioner nor the government addresses this claim in their briefs. Even if petitioner did raise this claim, moreover, the court would not consider it because petitioner had a full and fair hearing of this claim when he filed his motion to suppress before the district court. *See Tisnado v. United States*, 547 F.2d 452, 456 (9th Cir. 1976) ("Thus, according to *Stone v. Powell*, a federal court may not grant . . . habeas corpus relief on the basis that evidence [was] obtained in an unconstitutional search or seizure . . .where the defendant was provided an opportunity to litigate fully and fairly his fourth amendment claim before petitioning the federal court for collateral relief.") Petitioner may assert, however, as he does below, that his counsel provided ineffective assistance in arguing the motion to suppress before the district court. The court will consider each of petitioner's remaining claims in turn.

## DISCUSSION

1. *Petitioner's Claim of Ineffective Assistance of Counsel*.

Petitioner contends that his appointed counsel, Michael Kolker, provided ineffective assistance of counsel in a variety of ways. After stating the standard that governs such claims, the court analyze each specific claim.

Claims of ineffectiveness of counsel are reviewed according to the standard announced in *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984). In order to prevail, petitioner must establish two elements. First, he must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 687-88 (1984). Second, he must establish that he was prejudiced by

REPORT AND RECOMMENDATION
PAGE 4

counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Regarding the first prong of the *Strickland* test, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* The test is not whether another lawyer, with the benefit of hindsight, would have acted differently, but whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 689.

In addition, the Supreme Court has stated that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. "The object of an ineffective assistance claim is not to grade counsel's performance. If it is easier to dispose of an ineffective assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

A.  Counsel's alleged failure to interview and subpoena two police officers.

At the suppression hearing before the district court, petitioner's counsel questioned the two police officers who had detained and questioned petitioner on the night of his arrest. Petitioner first argues that his counsel was ineffective for failing to subpoena two other officers who were there at the same time, having responded to the original complaint about a man brandishing a firearm. Petitioner, however, does not specify how the testimony of these two other officers would have helped him. Instead, he concedes that he does not know what these officers would have said if they had testified. (Doc. #17 at 2). Still, he maintains that his counsel was deficient for not interviewing them. (*Id.*)

Petitioner's claim that counsel should have interviewed or subpoenaed the two officers is thus speculative and does not met the "prejudice" prong under *Strickland*. Consequently, the

1   claim should be denied.

### B. Counsel's alleged failure to interview two witnesses regarding marijuana.

Petitioner next argues that counsel was ineffective for failing to interview two witnesses who, he contends, would have contradicted the police officers' testimony that they observed marijuana in plain view when they opened the door to petitioner's car. In the memorandum accompanying his § 2255 motion, however, petitioner does not identify these two witnesses. (Doc. #1 at 11). In its response, the government argues that such failure to identify the witnesses is fatal to petitioner's claim. (Doc. #15 at 10, *citing Dows v. Woods*, 211 F.3d 480, 486-87 (9th Cir. 2000)).

Petitioner, in his traverse to the government's response, then proceeds to identify the two witnesses as the girl who originally called the police and her mother. (Doc. #17 at 3). However, petitioner's assertion, without more, that these two witnesses would have testified as he predicts, is not sufficient to show prejudice under *Strickland*. *See Dows*, 211 F.3d at 486 (requiring affidavits from witnesses in order to show prejudice). In addition, even assuming that petitioner is correct and the witnesses would have testified that there was no marijuana visible when the car door was opened, such testimony would have merely contradicted the police officers' testimony regarding a peripheral matter. Such a showing does not establish a "reasonable probability" that the suppression hearing would have turned out differently and thus petitioner does not show prejudice. For these reasons, petitioner's second claim of ineffective assistance should be denied.

### C. Counsel's alleged failure to introduce black bag and false identification.

Petitioner next argues that counsel was ineffective for failing to introduce a black leather bag found in petitioner's car and a false driver's license that the police testified was surrendered by petitioner. While difficult to decipher, it appears that petitioner's contention is that the bag was too big to fit in the glove compartment of the car, and that this fact, had it been proven, would have cast doubt on the officer's testimony that petitioner had originally told them that the bag was in the glove compartment. (Doc. #1 at 12). As petitioner puts it, "why would the owner

REPORT AND RECOMMENDATION
PAGE 6

of a leather bag that is obviously too big to fit in his own vehicle's glove compartment insist to the officers it was in the glove compartment?" (*Id.*) Petitioner thus implies that the police officers lied when they testified that petitioner instructed them to look for the bag in the glove compartment, because no reasonable person would have so instructed them.

Petitioner's argument regarding the false driver's license is similar. He contends that the driver's license is so obviously fake that it is unreasonable to believe that he would have offered it to the police, and that by claiming that he did so, the police are lying again.

Petitioner's claims regarding the leather bag and the false driver's license again do not satisfy the prejudice prong of *Strickland*. Even assuming that his counsel could have shown that the bag was too big to fit into the glove compartment, or that the driver's license was obviously false, this showing would not have necessarily shown the police to be lying. Another possibility seems to be that petitioner, whom the officers testified was increasingly nervous on the night of his arrest, simply acted in a manner consistent the officers' testimony, *i.e.*, he erroneously instructed the police to look in the glove compartment for the bag and he offered the police a poor facsimile of a driver's license. To conclude otherwise would be to equate speculation with prejudice. The standard under *Strickland* is more exacting. Accordingly, this claim should be denied.

D. Counsel's alleged failure to effectively use the 911 printout to impeach officers.

Petitioner next argues that his counsel was ineffective in failing to use the printout of the 911 calls to impeach the testimony of Officer Murry, one of the two officers who questioned petitioner. The 911 printout is attached as Exhibit E to petitioner's memorandum. (Doc. #1). Petitioner's argument is somewhat convoluted but appears to hinge on alleged discrepancies between the printout and Officer Murry's testimony. (Doc. #1 at 13-18; Doc. #17 at 3). The discrepancies appear to be related to the officer's various requests to the 911 dispatcher to search for a driver's license bearing petitioner's name, the timing of these requests, and the total elapsed time between the questioning of petitioner by the police and their trip to the garage to search

REPORT AND RECOMMENDATION
PAGE 7

petitioner's car. (*Id.*)

The court finds that these discrepancies, even if true, are minor and do not establish a reasonable probability that the district court would have ruled in petitioner's favor at the suppression hearing. Petitioner's suggested use of the 911 printout to impeach Officer Murry may have been a reasonable approach for his counsel to adopt; however, merely because counsel chose another approach does not mean that he was ineffective. Under *Strickland*, strategic decisions of this ilk are shielded from second-guessing. *See* 466 U.S. at 690 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.").

Therefore, petitioner's claim related to the 911 printout should be denied.

E.  Counsel's alleged failure to investigate the "grouping" of the firearm count.

Petitioner's final claim of ineffective assistance is that during plea negotiations with the government, counsel failed to investigate whether the firearm count should have been "grouped" with the other counts in order to reduce petitioner's potential sentence. The prosecutor believed that the firearm count should not be grouped with the identify fraud counts, since the counts each involved "different victims and different harms." (Doc. #15, Ex. 2 at 2). The parties subsequently signed a plea agreement in which they stipulated that the counts would not be grouped: "The parties also stipulate that the defendant did not possess the firearm in connection with the offenses charged in counts 1 through 3 and *therefore his offense level should not be enhanced* under U.S.S.G. 2F1.1(7)." (Doc. #1, Ex. F at ¶ 9) (emphasis added). In the presentence report, the probation office disagreed with this decision not to group the counts together, and indicated that had the counts been grouped, the offense level for petitioner would have been lower, and his sentencing range under the guidelines would have been 33 to 41 months. (Doc. #1, Ex. G at ¶ 145). Instead, petitioner was sentenced to 46 months. By failing to persuade the government to group the firearm and identity counts, and thereby make him eligible for a shorter sentence, petitioner argues that his counsel was ineffective.

REPORT AND RECOMMENDATION
PAGE 8

Petitioner's argument is problematic for several reasons.  First, it is not entirely clear that his sentence would have been lower had the counts been grouped:  The plea agreement indicates that "ungrouping" the counts benefitted petitioner while the presentence report indicates otherwise.  Thus, petitioner does not convincingly show that he was prejudiced by any lapse on his counsel's part to investigate and argue the grouping issue.

In addition, the court notes that it appears that any claim related to petitioner's sentencing is now moot, given that he has already served his full sentence.  Even if, as petitioner argues, he spent an extra five months in prison due to counsel's mistake (Doc. #17 at 7), the court would, at this juncture, be unable to rectify such a mistake.  Petitioner himself appears to understand that shortening his sentence is no longer an option, as petitioner simply asks in his request for relief that the court "discharge his term of supervised release." (Doc. #1 at 22).  However, petitioner does not support his request with any argument or authority showing that the proper remedy for a sentencing error that has become moot, is to shorten a subsequent term of supervised release.  For all these reasons, petitioner's claim that his counsel was ineffective for failing to investigate whether the counts should have been grouped together should be denied.

F.  <u>Counsel's alleged failure to challenge petitioner's restitution order.</u>

Finally, petitioner raises a miscellaneous claim that his counsel was ineffective for failing to challenge the district court's order of restitution in the case. (Doc. #1 at 21).  Orders of restitution, however, may not be challenged in a § 2255 motion, even if the challenge is couched in terms of ineffective assistance of counsel.  *See United States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002).  Accordingly, this claim should be dismissed.

2. *Petitioner's Claim Based upon an Intervening Change of Law (Blakely/Booker).*

In his second claim, petitioner argues that his sentence was enhanced based upon two findings by the district court, in violation of *Blakely v. Washington*, 542 S. Ct. 296 (2004).  (Doc. #1 at 21-22.)  Although petitioner relies upon *Blakely*, that case applied only to the Washington state sentencing scheme, not the federal sentencing guidelines under which petitioner was

REPORT AND RECOMMENDATION
PAGE 9

sentenced. On January 12, 2005, the Supreme Court decided *United States v. Booker*, 125 S. Ct. 738 (2005), which applied *Blakely's* principle – that sentencing enhancements must be based upon either an admission by the defendant or a finding by a jury – to federal sentences.

However, petitioner may not avail himself of *Booker's* holding in this collateral attack on his conviction. The Ninth Circuit, as well as all the other circuit courts that have considered the question, has held that neither *Blakely* nor *Booker* apply retroactively to cases on collateral review. *See Schardt v. Payne,* 414 F.3d 1025 (9th Cir. 2005); *United States v. Cruz*, 423 F.3d 1119 (9th Cir. 2005). Accordingly, petitioner's claim based upon *Blakely/Booker* may not be raised in the instant § 2255 motion.[2]

## CONCLUSION

For the foregoing reasons, petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, should be denied. A proposed Order is attached.

DATED this 28th day of November, 2005.

MONICA J. BENTON
United States Magistrate Judge

---

[2] In addition, because he has already finished serving his sentence, petitioner's *Blakely/Booker* claim now appears to be moot.

REPORT AND RECOMMENDATION
PAGE 10